CARLTON, Justice:
In this bond validation appeal, the right of the Town of Hillsboro Beach to offer bonds for the funding of a beach erosion project is challenged as violative of the Town Charter, Chapter 69-1111, Laws of Florida. Our jurisdiction vests under Article V, Section 4(2), Florida Constitution, F.S.A. We affirm the validation judgment rendered by the Circuit Court for Broward County.
We are told that the Town is approximately 3.2 miles in length and only 600 feet wide at its widest point. Its boundaries are formed in the North by the city limits of Deerfield Beach; in the East for the whole of the Town’s length by the Atlantic Ocean; in the West, again for the whole of its length, by the Intracoastal Waterway; in the South, by the Hillsboro Inlet. The Atlantic side is eroding in a manner sufficiently serious to have moved the electors of the Town to approve an $800,000 bond issue for countermeasures. The principal activity envisioned is the restoration and extension of the Atlantic beaches by sands brought in from offshore dredging. The improvement, as contemplated by the Town, would principally be effected by the addition of approximately 75 feet of sand eastward from the Mean High Water Base Line along the northernmost 5,000 feet of the Atlantic shore. The amount of $500,000 is to be set aside for this; the remaining funds are to be reserved for other anti-erosion measures as needed.
Appellants are a group of citizens of the Town that live in a condominium located on an island in the Intracoastal Waterway. We will dispose of their arguments in the sequence of their presentation. It is contended that the bond issue is premature because the project cannot be undertaken without approval of outside authorities having jurisdiction over the Atlantic shore, including Broward County, the State of Florida, and agencies of the United States government. This is akin to an argument advanced in Seadade Industries, Inc. v. Florida Power & Light Co., 245 So.2d 209 (Fla.1971), relating to a taking in condemnation for a project which had not yet been approved by outside governmental agencies.
We held in Seadade that a reasonable demonstration that regulations would be met, and a similar demonstration that work in advance of approval would not lead to irreparable harm to the environment should approval be denied, would be sufficient, if deemed so by the courts, unless an adverse party presented strong and convincing proof to the contrary. The Seadade rationale would seem appropriate here. We hold that the bond issue could be validated where the requisite reasonable showings have been made, where these showings have been judged sufficient by the court involved, and where the adverse party has not presented strong and convincing proof to the contrary. From the record, it appears that these tests have been met here. The project fits into the general scheme of anti-erosion measures currently in operation in Broward County, and those sanctioned by Fla.Stat. Ch. 161, F.S.A. known as the “Beach and Shore *212 Preservation Act.” The Town Engineer, who is also an administrator for the Bro-ward County Erosion Prevention District, has testified that the necessary permissions should be forthcoming. Appellants have presented little adverse evidence; their main thrust is simply that the permissions have not yet been secured. Although we find that under the circumstances this issue can be satisfactorily disposed of, we caution that it is a vital and decisive issue in litigation of this nature.
Next, it is contended that the erosion problem should be addressed by special assessment, not by a general obligation bond, because only the property owners along the Atlantic shore will be benefited. We do not agree. The benefit to the shore owners is incidental to the preservation of the shore line as the eastern boundary of the Town. Moreover, the geography of the Town is such that serious incursion of Atlantic waters would threaten its existence; recall that the Town is sandwiched between the ocean and the Intracoastal Waterway, and is 600 feet wide at its widest point.
Appellants argue that a substantial portion of the improvements would be located outside of the Town boundary on the Atlantic, which is set by the Town Charter (Art. I, § 8) as being the “ordinary low water mark.” They also point out that under Fla.Stat. § 161.191, F.S.A., title to improved beach land is divided between the upland owners and the State; furthermore, the Town itself owns no property along the shore. While these things are true, we do not think this affects the bond issue. Erosion does not respect boundaries which exist only as imaginary lines. The effective treatment of the problem requires the deposit of sands onto the beach shelf seaward beyond the ordinary low water mark. Piling sand only within the Town boundary would be to ignore the mechanics of erosion and invite failure. Moreover, even though a substantial portion of the improved beach will be within the domain of the sovereign, under Fla.Stat. § 161.201, F.S.A., the Town will exercise its police powers over this improved area.
The method of financing the project is the next point in dispute. The Town Charter (Art. V, § 19) provides: “Bonds may be issued only for the purpose of acquiring real property, constructing capital improvements, purchasing equipment with a probable useful life of fifteen (15) or more years, or refunding outstanding bonded indebtedness.” Appellants maintain that erosion countermeasures are not a proper subject for bond financing under this Charter provision.
Rather than contest this view, appellee asserts that other Charter language supports the bonds: Beach erosion is recognized by Article III, § 21 of the Town Charter as a matter in which the Town is empowered to act; Article III, § 7 allows the borrowing of money for the execution of Town powers as may be provided for under Fla.Stat. Ch. 169; Chapter 169, entitled “Power of Municipality to Borrow Money,” provides that money may be borrowed through bond financing and other means for the advancement of municipal powers and purposes. Appellee reasons that since beach erosion is within the compass of the Town’s powers, it is a fit subject for bond financing under Fla.Stat. Ch. 169, F.S.A.
We do not believe that the express restrictions on bonding provided by Article V, § 19 can be circumvented in this way. A special act (the Town Charter) takes precedence over a general act (Fla. Stat. Ch. 169), when the two cannot be harmonized. City of St. Petersburg v. Carter, 39 So.2d 804 (Fla.1949). The Town can borrow money under Chapter 169 but not by means of bonded indebtedness unless such bonds come within the limitations of Article V, § IP of the Charter. We have discussed appellee’s position *213 on this issue in order to point out the error in this defense lest the error be perpetuated and future litigation be provoked. Nonetheless, we think the appellee should prevail. Although it has chosen not to contest appellant’s argument that Article V, § 19’s bond provisions do not embrace beach erosion projects, we find that such projects are, in effect, capital improvements.[1] Black’s Law Dictionary 890 (4th ed. rev. 1969) defines an improvement as, “A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.” We find that the project satisfies this definition. The work will go beyond repair, and will extend the beach area an additional 75 feet seaward not only to enhance its utility and beauty, but also to adapt the beach itself as a means of averting erosion damage. When viewed in this manner, the limitations of Article V, § 19 are satisfied, and the project is also harmonized with Fla.Stat. Ch. 169.
Lastly, appellants argue that the life of the project is uncertain, and the Town Charter’s requirement (Article V, § 22(1)) that the bonds be retired within the life of the project cannot be satisfied. We find contrary testimony in the record to be persuasive. The Town Engineer and other officials have indicated that an estimated life span can be determined, and that with maintenance the improvement can last in perpetuity. The 15-year life of the bonds is not inconsistent with the estimated life of the project.
Having examined the issues raised, we are satisfied that the bond issue approved by the electors of the Town was properly validated. The judgment appealed from should be, and hereby is, affirmed.
It is so ordered.
ERVIN, Acting C. J., and BOYD, Mc-CAIN and DEKLE, JJ., concur.

. At first glance, it might seem that the project would come under the “aequisition of real property” provision of Town Charter Article V, § 19 set out above. However, Fla.Stat. § 161.191, F.S.A. specifies that title to beach land improvements are divided between the riparian upland owners and the sovereign, Since the Town owns no shore property, no title to the land improvements would vest in it.