433 So.2d 559 (1983)
Janice D. NEUMANN, Personal Representative of the Estate of Brian K. Roberts, a Deceased Minor, Appellant,
v.
DAVIS WATER AND WASTE, INC., and Davis Water and Waste Industries, Inc., D/B/a Davis Water and Waste, and State of Florida Department of Environmental Regulation, Appellees.
No. 81-1742.
District Court of Appeal of Florida, Second District.
May 13, 1983.
Rehearing Denied June 30, 1983.
*560 Ernest S. Marshall, P. Allen Schofield, Bradenton, for appellant.
James R. Dirmann of Dirmann & Scott, Sarasota, for appellee, Dept. of Environmental Regulation.
Barbara J. Paulson of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellee Davis.
OTT, Chief Judge.
The trial court dismissed with prejudice appellant's claims against Davis Water and Waste, Inc., and Davis Water and Waste *561 Industries, Inc., d/b/a Davis Water and Waste (Davis), and against the State of Florida Department of Environmental Regulation (DER). We affirm.
Appellant's third amended complaint for wrongful death alleged, inter alia, that appellant's three-year-old son was playing atop a sewage treatment tank when he fell into the tank and drowned. A claim against Davis was predicated on strict liability of Davis as the installer or assembler of a defective product, the treatment tank, on real estate as an integral part of the sewage facility in question. We decline to extend the strict liability principle of West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976), to structural improvements to real estate. See Strathmore Riverside Villas Condominium Association Inc. v. Paver Development Corp., 369 So.2d 971 (Fla. 2d DCA 1979); Alvarez v. DeAguirre, 395 So.2d 213 (Fla. 3d DCA 1981). Therefore, the trial court did not err in dismissing the strict liability claim against Davis. Likewise, an additional claim against Davis based on violation of section 768.10, Florida Statutes (1979), was properly dismissed. See Gload v. Birdsall Construction Co., 177 So.2d 894 (Fla. 2d DCA 1965).
In the count against DER, appellant alleged that upon original construction of the sewage treatment plant DER required the area to be fenced,[1] and that DER negligently failed to inspect the plant when originally constructed in 1966, or when reconstructed from 1975 through 1977, to ascertain whether the fencing requirement was fulfilled or continued. Further, appellant alleged that DER knew or should have known that children would likely be lured to the plant and, through its negligence, did not require the installation of safety and warning devices, and allowed the plant to be maintained and operated in an unsafe and inherently dangerous condition. As a result of DER's alleged negligence, the child drowned.
DER's motion to dismiss asserting sovereign immunity under Commercial Carrier v. Indian River County, 371 So.2d 1010 (Fla. 1979), was granted.
The general legislative and public policy detailed in section 403.021, Florida Statutes (1979); the general powers and duties conferred on DER in section 403.061; and the specific powers and duties as to sewer plants in section 403.085, et seq., seem clearly to speak to an exercise of the police power of the state. DER is directed to protect the water, air, and environment from pollution and concomitant hazards to human health and safety or to wildlife and property. There is serious question in our minds that DER has been required to police the design, installation, and operation of a sewer plant from the standpoint of the prevention of injury to those on or about the facility, such as the deceased child in this case. Even if such a broad duty exists, we do not believe it gives rise to a liability in tort of DER under the facts of this case. Further discussion is warranted because of the confusion continuing to surround suits against governmental entities.
The traditional doctrine of sovereign immunity rested on public policy considerations, such as
the protection of the public against profligate encroachments on the public treasury, Spangler v. Florida State Turnpike Authority, 106 So.2d 421 (Fla. 1958), and the need for the orderly administration of government, which, in the absence of immunity, would be disrupted if the state could be sued at the instance of every citizen, State Road Department of Tharp, 146 Fla. 745, 1 So.2d 868 (Fla. 1941).
Berek v. Metropolitan Dade County, 396 So.2d 756, 758 (Fla. 3d DCA 1981). Recognizing that a strict application of sovereign immunity would always preclude recovery *562 of damages by innocent parties injured as a result of misfeasance of government employees, courts fashioned exceptions to the doctrine in the area of municipal liability. We were faced with the task of applying labels  governmental and proprietary,[2] general duty and special duty,[3] or a combination[4]  to the activities of government. With these labels came confusion and pleas from the judiciary for a waiver of this "archaic and outmoded concept."[5]
The legislature responded by enacting section 768.28, Florida Statutes (1974 Supp.), which we originally perceived as a broad and complete waiver of sovereign immunity in Florida, except as limited by the legislature. However, courts quickly began fashioning exceptions to the waiver, asserting that "certain areas of governmental conduct [still] remain immune from scrutiny by judge or jury," thus perpetuating immunity and perplexing litigants. Commercial Carrier, 371 So.2d at 1017-1018. We were handed a new set of labels to apply to governmental activity  discretionary and nondiscretionary, or operational and planning level.
The rule (immunity) is now the exception, and the exception (liability) is the rule; "[e]verything has changed, yet nothing has changed."[6] Whether controlled by sovereign immunity or its waiver, and regardless of the labels we use, the result is the same: certain essential, fundamental activities of government must remain immune from tort liability so that our government can govern. See Department of Transportation v. Neilson, 419 So.2d 1071, 1075 (Fla. 1982). We perceive the pure exercise of the police power to be the clearest illustration of where to allow tort liability would strike at the very foundation of the power to govern.
In determining what functions of government remain immune from tort liability, the Commercial Carrier court adopted the operational versus planning level analysis of Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968).[7] The Johnson court, construing a statute granting immunity to public employees exercising discretion, rejected
a purely mechanical analysis of "discretionary" in favor of greater reliance on the policy considerations relevant to the purposes of granting immunity to the governmental agency whose employees act in discretionary capacities.
* * * * * *
"[V]arious factors furnish a means of deciding whether the agency in a particular case should have immunity, such as the importance to the public of the function involved, the extent to which governmental liability might impair free exercise of the function, and the availability to individuals affected of remedies other than tort suits [against government] for damages."
Id. at 357, citing Lipman v. Brisbane Elementary School Dist., 55 Cal.2d 224, 230, 11 Cal. Rptr. 97, 99, 359 P.2d 465, 467 (1961). The Johnson court further noted that a workable definition of "discretionary" must recognize that much of what is done by government employees must remain beyond the range of judicial inquiry. 447 P.2d at 360.
We decline to assign a label to DER's decision whether to police the construction, subsequent remodeling, or plant operation following issuance of the construction permit. *563 The circumstances here present another "square peg that will not fit either the `operational,' `planning,' or `discretionary-nondiscretionary' tests as set forth in Commercial Carrier and its progeny." Everton v. Willard, 426 So.2d 996 (Fla. 2d DCA 1983), at 1003.
DER did not design, construct, own, operate, or maintain the sewage treatment plant. Therefore, the accident was not caused by a direct operational act of government or its employees. Compare City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982) (governmental entity created known dangerous condition); Department of Transportation v. Kennedy, 429 So.2d 1210 (Fla. 2d DCA 1982) (negligent maintenance of state road right-of-way). We further point out that the record on appeal discloses the existence of pending claims against the owners, constructors, designers, persons charged with supervision and maintenance, and Manatee County. Hence, appellant has remedies other than suit against DER. Cf. Johnson, 447 P.2d at 357.
The most important factor to consider is that by imposing rules and regulations and deciding when and where or what to inspect, DER is exercising the police power of the state, a purely governmental function which historically has enjoyed immunity from tort liability. See, e.g., Wong v. City of Miami, 237 So.2d 132 (Fla. 1970); Hernandez v. City of Miami, 305 So.2d 277 (Fla. 3d DCA 1974). If we were to hold DER liable here we would, by analogy, be requiring a law enforcement officer to be posted on every street corner. Any time a crime or other violation of law resulted in injury to person or property, a judge or jury would have to second guess the reasonableness or adequacy of the police action. Our legislature enacts traffic and penal laws, but law enforcement agencies cannot guarantee that these laws will be obeyed. Government cannot become the insurer of those injured when its laws and regulations are broken or safety measures it imposes are ignored by others.
The decision of the trial court is AFFIRMED.
SCHEB and SCHOONOVER, JJ., concur.
NOTES
[1] As evidence of the fence requirement, appellant attached to her complaint a copy of a letter dated March 28, 1966, from one Ralph H. Baker, Jr., of the Florida State Board of Health. The letter announces approval of the plans for the subject sewer treatment plant, "subject to the following provisos:

* * * * * *
9. The treatment plant should be fenced to keep out unauthorized personnel."
[2] E.g., City of Miami v. Bethel, 65 So.2d 34 (Fla. 1953).
[3] E.g., Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957).
[4] E.g., Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967).
[5] Hargrove, 96 So.2d at 132; see also City of Miami v. Bethel, supra note 2 (dissenting opinions of Terrell and Hobson).
[6] Collom v. City of St. Petersburg, 400 So.2d 507, 508 (Fla. 2d DCA 1981), aff'd, 419 So.2d 1082 (Fla. 1982).
[7] Commercial Carrier further commended to our use the four-part discretionary function test laid down in Evangelical United Brethren Church of Adna v. State, 67 Wash.2d 246, 407 P.2d 440 (1965), which we found to be uninstructive in this case.