Mr. L. Michael Milbrath County Attorney Marion County 19 N.W. Pine Avenue Room 200 Ocala, Florida 32670
Dear Mr. Milbrath:
This is in response to your request for an opinion on substantially the following question:
 WHETHER A NONCHARTER COUNTY CAN LEVY SPECIAL ASSESSMENTS AGAINST ALL TAXABLE REAL PROPERTY LOCATED IN AN UNRECORDED SUBDIVISION IN WHICH ACCESS TO ALL OR PORTIONS OF THE LOTS OR PARCELS OF LAND IS BY ROADS OR EASEMENTS NOT OWNED BY OR DEDICATED TO THE PUBLIC OR TO MARION COUNTY FOR THE PURPOSE OF MAKING ROAD AND DRAINAGE IMPROVEMENTS?
You state in your letter that there are several unrecorded subdivisions in Marion County in which access to all or portions of the lots or parcels of land is by roads or easements not owned by or dedicated to the public or to Marion County. You further state that the board of county commissioners has received several requests to perform road and drainage improvements on these private roads and easements.
Section 125.01(1)(r), F.S. (1984 Supp.), among other things, provides that the legislative and governing body of a county shall have the power to carry on county government which, to the extent not inconsistent with general or special law, shall include the power to "[l]evy and collect taxes, . . . and special assessments; . . . which power shall be exercised in such manner, and subject to such limitations, as may be provided by general law." (e.s.) While the legislative and governing body of a noncharter county has been granted broad home rule powers by s. 1(f), Art. VIII, State Const., as implemented by s. 125.01, F.S., and as construed by the Florida Supreme Court in Speer v. Olson, 367 So.2d 207, 211
(Fla. 1978), such county derives no taxing and assessment power from s. 1(f) of Art. VIII, State Const. Such taxing and assessment power requires enabling legislation. See, ss. 1(a) and 9, Art. VII, State Const. Cf., City of Miami v. Brinker, 342 So.2d 115 (3 D.C.A.Fla., 1977) (municipality has no inherent power to levy assessments); AGO's 80-87, 82-9. Special assessments are charges assessed by a governmental agency or unit against particular parcels of land which have received a special benefit from the public improvement; the amount of the assessments is computed by apportioning all or part of the total cost of such improvements among the properties especially benefitted. See, City of Treasure Island v. Strong, 215 So.2d 473 (Fla. 1968); Atlantic Coast Line R. Co. v. City of Gainesville, 91 So. 118 (Fla. 1922); 48 Fla.Jur.2d Special Assessments s. 1; 70 Am.Jur.2d Special or Local Assessments ss. 1 and 18; 14 McQuillin Municipal Corporations ss.38.02, 38.32 and 38.124. Special assessments place a special or local charge on the land involved on the basis that the property derives a special benefit in addition to the general benefit to the public. See, Hillsboro Island House Condominium Apartments, Inc. v. Town of Hillsboro Beach, 263 So.2d 209 (Fla. 1972); Rosche v. City of Hollywood, 55 So.2d 909 (Fla. 1952); Klemm v. Davenport,129 So. 904 (Fla. 1930).
While special assessments are distinguishable from taxes, they are levied under the taxing power and are, in a broad sense, a peculiar species of taxes. See, Jackson v. City of Lake Worth,23 So.2d 526 (Fla. 1945) (assessment for benefit, although not strictly speaking a tax, is a burden levied under power of taxation); State ex rel. Board of Supervisors of South Florida Conservancy District v. Caldwell, 35 So.2d 642 (Fla. 1948); Anderson v. City of Ocala, 91 So. 182 (Fla. 1922) (power exerted in imposing and collecting special assessments is the taxing power of the state). The levy of special assessments on real property is therefore subject to constitutional proscriptions limiting the imposition of taxes for public purposes. See, s. 1, Art. VII, State Const., which limits the imposition of taxes and the expenditure of tax revenues to public purposes. And see, s. 10, Art. VII, State Const. Thus, a special assessment must be for a public purpose. See, Atlantic Coast Line R. Co. v. City of Lakeland, 115 So. 669, 676 (Fla. 1927), wherein the Florida Supreme Court stated that "[t]he paving of streets and sidewalks results from the demand which arises for additional conveniences for the public at large, and the power to tax for it rests upon the existence of public necessity." The Court at 677 went on to conclude:
 There is in this state's Constitution no provision which may be construed or tortured into a construction authorizing a municipality to tax a citizen to make him build improvements for his own benefit merely. It must be for a public purpose or it is not a legitimate exercise of the taxing power, and it cannot be warranted under any other power known to constitutional government. . . .
It is necessary in order for such assessment to be valid that the project be a public not a private project. 70 Am.Jur.2d Special or Local Assessments s. 17.
This office has previously addressed the issue of whether a county could provide minor work or repairs on private roads and expend county funds therefor. It was stated in AGO 73-222 that "[a] private road is, by its very nature, not available to the public, and the public has no right to travel by motor vehicle thereon. This being the case, the repair or maintenance of such a road cannot serve a public or county purpose." See also, Brumby v. City of Clearwater, 149 So. 203 (Fla. 1933), wherein the Court found invalid a contract entered into by a municipality and a private individual, under which the municipality, was to dredge a channel leading to the private individual's place of business. In AGO 79-14, this office concluded that "[a] municipality may not lawfully expend public funds to repair or maintain privately owned roads or streets located within the municipality."
Applying these constitutional principles and judicial decisions to the facts presented in your inquiry, it would not appear, in my opinion, that roads or easements and drainage improvements to such roads or easements in a subdivision to which access to all portions of the lots or parcels of lands is by roads or easements not owned by or dedicated to the public or to the county, would serve a public purpose, and that such improvements would benefit only the private landowners since the roads or easements are not owned by or dedicated to the public or Marion County. This conclusion is applicable to drainage improvements that are made as a concomitant to or an integral part of the road or easement improvements in question. No comment, however, is expressed herein as to any independent drainage improvements that are deemed necessary or expedient, for sanitary or agricultural purposes or conducive to the public health, convenience or welfare, or public utility, or for the benefit of any lands that are low, wet, submerged or liable to become submerged; for such projects the county may utilize the provisions of Ch. 157, F.S., to effectuate such drainage purposes.
Therefore, unless and until judicially determined to the contrary, it is my opinion that a county is not authorized to levy special assessments on all taxable real property located in an unrecorded subdivision in which access to all or portions of the lots or parcels of land is by roads or easements not owned by or dedicated to the public or to Marion County for the purpose of making road and drainage improvements to such private roads. However, if the county determines that a drainage project is necessary or expedient, for sanitary or agricultural purposes or conducive to public health, convenience or welfare, or public utility, or for the benefit of lands that are low, wet, submerged or liable to become submerged, the county may utilize the provisions of Ch.157, F.S., to effectuate the purposes specified therein.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General