634 So.2d 1137 (1994)
John PAMPERIN, Appellant,
v.
The INTERLAKE COMPANIES, INC., a foreign corporation, Appellee.
No. 93-302.
District Court of Appeal of Florida, First District.
April 12, 1994.
*1138 Robert Scott Cox and David H. Burns of Cox, Weaver & Burn, Tallahassee, and Joseph E. Brooks, Tallahassee, for appellant.
James B. Fensom and Christine C. Nichols of Barron, Redding, Hughes, Fite, Bassett & Fensom, P.A., Panama City, for appellee.
PER CURIAM.
John Pamperin appeals from an order of the trial court granting summary judgment in favor of The Interlake Companies, Inc. (Interlake) on all counts of his complaint which alleged personal injuries caused in a fall from a storage rack system. We reverse.
Pamperin, an employee of Equimco Corporation, was injured on April 12, 1988, when a horizontal beam gave way as he was ascending a storage rack. Pamperin filed a complaint stating a cause of action in negligence, breach of implied warranty, and strict products liability against Interlake, the designer and manufacturer of the storage rack system. In due course, Interlake filed the instant motion for summary judgment asserting no genuine issue of material fact on the basis there could be no proximate cause relationship between any alleged defect or act and Pamperin's injuries.
The pertinent facts are as follows. The Russell Corporation (a non-party) purchased a storage rack system from Interlake for erection in their warehouse located in Marianna, Florida. Pamperin, an employee of Equimco, was hired as job superintendent overseeing assembly of the storage rack. No employees of Interlake were responsible for actual assemblage. The assembly process was conducted by use of a scissor lift. Assemblers would begin at the top of a 40-foot high vertical column and work down to the ground level, inserting brackets on 8-foot long horizontal cross beams into holes in the vertical columns. Once the horizontal beams were installed, assemblers engaged a safety lock to secure the beams. As assembly was underway, workers began to experience difficulties attaching and securing the horizontal members of the system into the vertical members. Specifically, the struts located on some of the vertical members were allegedly miswelded, blocking slots into which the brackets of the horizontal members were to be fitted. On some occasions, it became necessary for assemblers to use hammers or acetylene torches to engage the members.
On the date of the accident, several months into the assemblage process, Pamperin was informed that an alignment problem had arisen in a section of the storage rack. To determine the cause of misalignment, Pamperin had to obtain a diagonal measurement from one corner of the rack to the opposite corner. To do so, Pamperin climbed the system manually, in a ladder-like fashion, as he had done numerous times. Although a scissor lift and safety belt were available for his use, Pamperin chose not to utilize either on this date. Rick Alexander, Interlake's on-site manager, as well as several assembly workers, also commonly climbed the system manually. On this date, as Pamperin climbed the rack, at a point approximately 20 feet high a horizontal cross beam swung loose as he reached for it, causing him to lose his footing and fall to the floor sustaining severe injuries.
At the same time Pamperin was climbing the rack, assemblers had been installing horizontal members in the exact area. Unbeknownst to Pamperin, two assemblers had experienced difficulty engaging one side of a horizontal beam into a vertical beam. After several unsuccessful attempts, the assemblers decided that use of an acetylene torch would be necessary. However, they did not *1139 have a torch with them on the scissor lift and, rather than immediately lowering themselves to retrieve the torch and secure the beam, they elected to continue installing the remaining horizontal beams until the scissor lift returned to the ground, thus leaving the problematic beam unflagged and hanging loose in the interim. Although it is not entirely clear how long the beam was left unsecured, one assembler avowed it was not a "minute later" before Pamperin had began to climb the rack in the direction of the unattached horizontal beam.
In moving for summary judgment. Interlake disclaimed all liability by contending that the actions of the rack assemblers in leaving the beam unsecured, as well as Pamperin's improvident method of climbing the system, constituted independent, efficient intervening causes which broke the chain of causation between the alleged defective manufacturing and Pamperin's injuries. In addition, Interlake contended that responsibility for any defect in the component parts of the system shifted to Equimco, as assembler of the finished product. Lastly, Interlake argued that the storage rack could not be deemed a product for purposes of products liability, but should be considered a permanent fixture to real property. The lower court agreed, and entered summary judgment in favor of Interlake on all counts.
The purpose of a summary judgment proceeding is to determine the existence or absence of triable issues of fact. A party moving for summary judgment must show conclusively there is no genuine issue as to any material fact. Lee v. Old Southern Trucking, Inc., 552 So.2d 277 (Fla. 1st DCA 1989), review denied, 562 So.2d 346 (Fla. 1990). The circumstances under which a court may resolve the question of proximate cause as a matter of law are extremely limited. LeMaster v. Glock, 610 So.2d 1336 (Fla. 1st DCA 1992), review denied, 620 So.2d 760 (Fla. 1993). Issues of proximate and intervening cause generally present jury questions; only where reasonable persons could not differ on the issue of foreseeability may the court decide as a matter of law that a certain act or conduct constitutes an independent, efficient intervening cause. Department of Transportation v. Anglin, 502 So.2d 896 (Fla. 1987).
In the case sub judice, Interlake contends the actions of the Equimco employees were so far beyond the realm of foreseeability that, as a matter of law and policy, Interlake cannot be held liable for Pamperin's injuries, on a theory of either negligence or strict liability. Pamperin, on the other hand, asserts the trial court erred in granting summary judgment because genuine issues of material fact exist regarding the issues of foreseeability and intervening and proximate cause. We agree with the latter position. Professional engineer Wayne Coloney, Pamperin's expert witness, opined that the horizontal cross members would not engage because the cross supports were defectively and negligently welded too far into the channel of the vertical supports. Coloney attested that in his opinion, the practice of requiring an assembler to exercise quality control is unacceptable engineering practice. Coloney believes that, under the circumstances, the actions of the two Equimco employees in leaving a beam unsecured without warning were reasonably foreseeable. Further, Coloney opined that climbing upon the rack system's horizontal cross beams was a routine, common and foreseeable practice.
The deposition testimony of the various on-site workers reveals that horizontal beams designed and manufactured by Interlake could not be securely attached to the vertical beams. Assemblers often applied hammers and/or torches to engage the beams. It was fairly common for workers to climb the racks manually. Applying the foregoing rules of law to these facts, we conclude that the determination of whether Pamperin's method of climbing the rack in this instance rose to the level of an intervening cause, completely vitiating any liability on Interlake's part, is for the jury. Likewise, whether the action of the assemblers in leaving a horizontal beam unsecured for any length of time was so unforeseeable as to rise to the level of an independent intervening cause is more appropriately a question for the jury in this instance. It cannot be said, on the record before us, that reasonable persons could not disagree on these issues. Fair minded persons *1140 could draw differing inferences from the facts presented. Consequently, summary judgment should not have been granted. See Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980); Powers v. Ryder Truck Rental, Inc., 625 So.2d 979 (Fla. 1st DCA 1993).
We address now the lower court's determination that the instant storage rack system is not a product within the scope of the strict liability doctrine. We are aware of the line of cases holding that structural improvements to real property are not generally considered products for purposes of products liability actions. Easterday v. Masiello, 518 So.2d 260 (Fla. 1988) (jail facility); Seitz v. Zac Smith & Co., Inc., 500 So.2d 706 (Fla. 1st DCA 1987) (floodlight tower); Craft v. Wet 'N Wild, Inc., 489 So.2d 1221 (Fla. 5th DCA 1986) (amusement park water slide); Neumann v. Davis Water and Waste, Inc., 433 So.2d 559 (Fla. 2d DCA), review denied, 441 So.2d 632 (Fla. 1983) (sewage treatment tank); and Edward M. Chadbourne, Inc. v. Vaughn, 491 So.2d 551 (Fla. 1986) (public road). We conclude, however, that the lower court erred in likening this rack system to such permanent fixtures. Expert witness Coloney attested that such storage rack systems can be, and are, disassembled and resold and are not permanent improvements to real property. We cannot glean from the order below whether the lower court overlooked, disregarded, or discounted this testimony. We, however, find it compelling on this issue. Upon review of the record below, and after carefully analyzing existing case law on the subject, we conclude, as a matter of law, that the instant storage rack system is a product for purposes of the underlying action.
The summary judgment is REVERSED as to all counts and this cause is REMANDED for further proceedings.
ERVIN, MICKLE and DAVIS, JJ., concur.