971 So.2d 918 (2007)
Nicholas PLAZA, Appellant,
v.
FISHER DEVELOPMENT, INC., et al., Appellees.
No. 3D06-3190.
District Court of Appeal of Florida, Third District.
December 19, 2007.
*919 Templer Law and Laura P. Templer, for appellant.
Richard A. Sherman, Sr., Ft. Lauderdale; Wolpe, Leibowitz, Alvarez, Fernandez and George L. Fernandez, Miami, for appellee Fisher Development, Inc.
Before RAMIREZ, SUAREZ, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
The plaintiff, Nicholas Plaza ("the Plaintiff"), appeals from an order granting final summary judgment in favor of defendant Fisher Development, Inc. ("Fisher"). We affirm.
In 1999, the Plaintiff, who was an employee of Pottery Barn, was allegedly injured when he fell onto a conveyor system at a Pottery Barn store. In 2001, the Plaintiff filed suit against several entities, including Automated Conveyor Systems, Inc. ("Automated Conveyor"), Northern Steel Company ("Northern Steel"), and Fisher. The Plaintiff's second amended complaint alleges two counts against Fisher, strict liability (Count V) and negligence (Count VI). Count V alleges that Fisher is strictly liable for the injuries sustained by the Plaintiff because Fisher was the distributor of the subject conveyor, which was defective when it left Fisher's possession. Count VI alleges that Fisher, "through its employees and/or agents, was negligent in the manner in which it installed or assembled the conveyor." The Plaintiff's second amended complaint alleges that the subject conveyor was defective because the "pinch point" was not protected by a guard and because there was no "kill-switch" control. In its answer to the second amended complaint, Fisher denied these allegations.
After approximately five years of defending against this lawsuit, Fisher filed a motion for final summary judgment, arguing that based on the undisputed facts, it was entitled to judgment as a matter of law. Fisher asserted that the undisputed facts demonstrate that it was hired by Williams-Sonoma, Inc., Pottery Barn's parent company, to act as the general contractor for the construction of the Pottery Barn store where the Plaintiff was allegedly injured; Williams-Sonoma and its architect supplied the plans and specifications, which included the installation of the subject conveyor; Fisher entered into a subcontract with Northern Steel, whereby Northern Steel agreed to provide and install the subject conveyor; the subject conveyor was designed, manufactured, and sold by Automated Conveyor; the allegedly defective conditions were patent; and Williams-Sonoma had inspected, accepted, and approved the construction of the Pottery Barn store.
As to the strict liability count, Fisher, citing to Neumann v. Davis Water & Waste, Inc., 433 So.2d 559 (Fla. 2d DCA 1983), argued, in part, that it was entitled to summary judgment because the subject conveyor is a structural improvement to real property, not a product, and Florida law recognizes that principles of strict liability are not applicable to structural improvements to real property. As to the negligence count, Fisher argued that the allegedly defective conditions were clearly *920 patent, and under the Slavin[1] doctrine, a contractor cannot be held liable for injuries sustained by third parties that occurred after the contractor completed its work and the owner of the property accepted the contractor's work if the defects causing the injury were patent.
In support of its motion for final summary judgment, Fisher submitted the affidavit of Denise Sharp, Fisher's President. She averred that Fisher is not a distributor or manufacturer of conveyor systems; it did not manufacture, distribute, or sell the subject conveyor system; Northern Steel was the subcontractor hired by Fisher to install the subject conveyor system; and in 1997, Williams-Sonoma conducted the final walk-through of the Pottery Barn store, and accepted all of the work completed by Fisher and its subcontractors.
At the hearing on the motion for summary judgment, it was undisputed that when a customer purchases an item at the Pottery Barn store, the subject conveyor is utilized to transport the item from Pottery Barn's storage area, which is located on the second floor, to Pottery Barn's retail area, which is located on the first floor. The subject conveyor is affixed to a stretcher that has an electrical system, and the electrical system is affixed to the building.
The trial court granted Fisher's motion for final summary judgment. Thereafter, the Plaintiff filed the instant appeal.
The Plaintiff contends, in part, that the trial court erred in granting summary judgment in favor of Fisher as to the strict liability count because the subject conveyor is a product, not a structural improvement to real property, and therefore, Fisher can be held strictly liable. We disagree.
In West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976), the Florida Supreme Court adopted the doctrine of strict liability as set forth in section 402A of the American Law Institute Restatement (Second) of Torts. As summarized by the court, "strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." West, 336 So.2d at 86 (emphasis added). This doctrine has since been expanded "to others in the distributive chain including retailers, wholesalers, and distributors." Samuel Friedland Family Enters. v. Amoroso, 630 So.2d 1067, 1068 (Fla.1994).
Fisher, citing to Neumann, argues on appeal, as it did below, that the subject conveyor is a structural improvement to real property, not a product, and therefore, the doctrine of strict liability is inapplicable. In Neumann, a three-year-old boy drowned after he fell into a sewage treatment tank. The plaintiffs asserted a strict liability claim against the defendant, who was the installer or assembler of the sewage treatment tank. The trial court dismissed with prejudice the strict liability claim against the defendant. The plaintiffs appealed the trial court's decision to the Second District Court of Appeal. The Second District, noting that the sewage treatment tank was "an integral part of the sewage facility," declined "to extend the strict liability principle of West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976), to structural improvements to real estate." Neumann, 433 So.2d at 561; see Easterday v. Masiello, 518 So.2d 260, 261 (Fla.1988) ("[I]t has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate."); Jackson v. L.A.W. Contracting *921 Corp., 481 So.2d 1290, 1291 (Fla. 5th DCA 1986).
The Plaintiff argues that Neumann is inapplicable because the subject conveyor system is a product, not a structural improvement to real property. In support of his argument, the Plaintiff relies on Tri-Pak Machinery, Inc. v. Hartshorn, 644 So.2d 118 (Fla. 2d DCA 1994). In Tri-Pak, the plaintiffs, Mr. and Mrs. Hartshorn, filed a strict liability claim against the manufacturer of the conveyor, Tri-Pak Machinery, Inc. ("Tri-Pak"), alleging that Mrs. Hartshorn was injured when her finger got caught in a conveyor at a tomato packing plant. The trial court instructed the jury on strict liability and negligence. The jury returned a verdict in favor of Tri-Pak, and thereafter, the trial court granted the plaintiffs' motion for new trial. Tri-Pak appealed to the Second District.
The Plaintiff acknowledges that Tri-Pak does not address whether a conveyor is a product or a structural improvement to real property, but argues that because the trial court instructed the jury on strict liability, the trial court found that the conveyor was a product subject to strict liability principles. The Plaintiff's reliance on Tri-Pak is misplaced. First, there is no indication in the opinion that this issue was raised before the trial court, or that the trial court even considered this issue. Next, Tri-Pak is factually distinguishable as the lawsuit was filed against the manufacturer of the conveyor system, and in the instant case, Fisher is not the manufacturer of the subject conveyor system.
The Plaintiff also relies on the First District Court of Appeal's decision in Pamperin v. Interlake Cos., 634 So.2d 1137 (Fla. 1st DCA 1994), in support of his argument that the conveyor system is a "product," and therefore, within the scope of the strict liability doctrine. In Pamperin, the plaintiff's employer was hired to install a storage rack system that was manufactured by Interlake Companies Corporation ("Interlake"). While installing the storage rack system, the plaintiff fell due to a defect in the storage rack system, and he was injured. The plaintiff filed a strict liability action against the manufacturer, Interlake. Interlake moved for summary judgment, arguing, in part, that it could not be held strictly liable because the storage rack system was an improvement to real property, not a product. The trial court granted Interlake's motion for summary judgment. The plaintiff appealed to the First District, which reversed, holding, in part, as follows:
We address now the lower court's determination that the instant storage rack system is not a product within the scope of the strict liability doctrine. We are aware of the line of cases holding that structural improvements to real property are not generally considered products for purposes of products liability actions. Easterday v. Masiello, 518 So.2d 260 (Fla.1988) (jail facility); Seitz v. Zac Smith & Co., Inc., 500 So.2d 706 (Fla. 1st DCA 1987) (floodlight tower); Craft v. Wet `N Wild, Inc., 489 So.2d 1221 (Fla. 5th DCA 1986) (amusement park water slide); Neumann v. Davis Water and Waste, Inc., 433 So.2d 559 (Fla. 2d DCA 1983), review denied, 441 So.2d 632 (Fla.1983) (sewage treatment tank); and Edward M. Chadbourne, Inc. v. Vaughn, 491 So.2d 551 (Fla.1986) (public road). We conclude, however, that the lower court erred in likening this rack system to such permanent fixtures. Expert witness Coloney attested that such storage rack systems can be, and are, disassembled and resold and are not permanent improvements to real property. We cannot glean from the order below whether the lower court overlooked, disregarded, or discounted this *922 testimony. We, however, find it compelling on this issue. Upon review of the record below, and after carefully analyzing existing case law on the subject, we conclude, as a matter of law, that the instant storage rack system is a product for purposes of the underlying action.
Pamperin, 634 So.2d at 1140.
We find that Pamperin is distinguishable because the strict liability count in that case was filed against the manufacturer of the storage rack system, whereas, the strict liability count, which is the subject of this appeal, was filed against the general contractor. We are equally unpersuaded by the notion that the determination of whether the subject storage rack system is a "product," should be governed by whether it can be disassembled and then resold. If that was the case, practically anything affixed to real property would constitute a "product." More importantly, Plaza never presented any sworn testimony that the subject conveyor system could be disassembled and resold. Pamperin is, therefore, inapplicable.
Although we have not located a Florida case addressing whether a conveyor system is a product or a structural improvement to real property, courts in other jurisdictions have concluded that the subject conveyor systems before them were structural improvements to real property, not a product. In McCormick v. Columbus Conveyer Co., 522 Pa. 520, 564 A.2d 907 (1989), Mr. McCormick was injured when his arm got caught in a conveyor belt of a coal delivery system. Two of the defendants filed motions for summary judgment, arguing that the statute of repose barred the action. The statute of repose provided, in part, as follows: "[A] civil action or proceeding brought against any person lawfully performing or furnishing the design, planning supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages. . . ." Id. at 908 (quoting 42 Pa. Cons.Stat. § 5536). The trial court granted the motions for summary judgment finding that the conveyor belt on which Mr. McCormick was injured was an improvement to real property, not a product.
The Pennsylvania Supreme Court agreed with the trial court's findings and concluded that, as a matter of law, the conveyor system was an "improvement to real property." In making this determination, the court relied on the definition of "improvement" in Black's Law Dictionary, a definition it found "comports with the ordinary and common usage of the word." Id. The court noted that Black's Law Dictionary defined "improvement" as "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." Id. (quoting Black's Law Dictionary 682 (5th ed.1979)).
Similarly, in Hilliard v. Lummus Co., 834 F.2d 1352 (7th Cir.1987), the United States Court of Appeals, Seventh Circuit, addressed whether a conveyor was "an improvement to real property" as the term is used in an Illinois statute of repose. The defendant, Lummus Company ("Lummus"), moved for summary judgment arguing that it was entitled to judgment based on a statute of repose, which provides: "No action based on tort . . . may be brought for an act or omission of such person in the design, planning, supervision, observation or management of construction or construction of an improvement to real property after 12 years have elapsed from the time of such act or omission. . . ." *923 Id. at 1354 (citing Ill.Code Civ. P. § 13-214(b)). In response, the plaintiff, Mr. Hilliard, argued that Lummus did not participate in the improvement of real property, but merely supplied a product that was installed in real property. Mr. Hilliard further argued that the screw conveyor was not a large piece of equipment and that it could be removed easily from the owner's property without causing significant damage to the property or loss of value to the property. The district court rejected Mr. Hilliard's argument, and granted summary judgment in favor of Lummus, stating as follows:
The uncontested deposition testimony establishes that the conveyor was installed in about 1950 along with the construction of the building and has remained there ever since. The conveyor was not a repair to or a replacement of anything that previously existed. Furthermore, we do not think that it can seriously be doubted that the conveyor substantially enhanced the value of the property. The plant is designed to produce processed cocoa, and the conveyor was built as an integral component of that process.
Hilliard does not dispute any of this, but rather contests only Lummus' assertion that the conveyor was bolted or welded to the concrete or steel supports. . . . Hilliard appears to be arguing that the conveyor is not a "fixture" and implies that this is a requirement for the application of § 13-214. We disagree. As we explained above, the words of a statute are to be given their common ordinary meaning unless the statute indicates otherwise. Nothing in § 13-214 indicates that it intended the peculiar definitions of fixture law to apply to that section. . . . If Hilliard's argument is intended to raise an issue as to the conveyor's permanence, we must disagree. Taken to its logical conclusion, Hilliard's argument would mean that nothing could be considered an "improvement to real property" if there were any possibility that the structure might be redesigned or rebuilt at any time, no matter how far into the future. We do not think this is a reasonable interpretation of the statutory language. We reiterate that the undisputed testimony shows that the original conveyor was installed in about 1950 and has been in place ever since. . . . In sum, we conclude that the conveyor constitutes an "improvement to real property" for purposes of § 13-214, and that § 13-214 therefore applies to bar Hilliard's negligence claim.
Id. at 1355 (last omission added). The Seventh Circuit, agreeing with the district court's analysis, concluded that the screw conveyor was an "improvement to real property," not a product. Id. at 1356.[2]
The United States Court of Appeals, Fourth District, in Hill v. Bechtel Corp., 107 F.3d 866, 1997 WL 86029 (4th Cir. 1997) (unpublished table opinion), addressed whether a conveyor was "an improvement to real property," as the term is used in a Maryland statute of repose. In Hill, the plaintiff was injured when her arm was caught in a conveyor belt. The defendant sought summary judgment, arguing that the conveyor belt was an "improvement to real property," as the term is issued in Maryland's statute of repose. The district court granted the motion. The Fourth Circuit affirmed the trial court's order, concluding that, as a matter *924 of law, the conveyor belt was an "improvement to real property." Id.
Additionally, the court in Hidalgo v. Fagen, Inc., 206 F.3d 1013 (10th Cir.2000), found that the subject conveyor was a structural improvement to real property, not a product. Sabino Hidalgo ("Hidalgo"), was injured while cleaning a screw conveyor at a meat packing plant. He filed suit against several entities, including Fagen, Inc. ("Fagen"), which is the contractor hired to construct the conveyor system. The district court granted partial summary judgment in favor of Fagen as to the strict liability claim, finding that under Colorado law, strict liability principles do not apply to improvements to real property. On appeal to the United States Court of Appeals, Tenth Circuit, the court affirmed the district court's decision, stating, "In viewing the summary judgment evidence on this point, it appears to us that Hidalgo has not come forward with sufficient evidence to demonstrate that Fagen sold a product, rather than sold services, resulting in an improvement to real property." Id. at 1018.
In the case before us, the undisputed facts demonstrate that the subject conveyor system was installed in 1997, when the Pottery Barn store was being constructed by Fisher. The purpose of the conveyor system is to transport items that have been purchased by Pottery Barn customers from Pottery Barn's storage area, which is located on the second floor, to Pottery Barn's retail area, which is located on the first floor. The subject conveyor is affixed to a stretcher that has an electrical system, and the electrical system is affixed to the building. Thus, it is clear that the subject conveyor is "an integral part of" Pottery Barn's operation, in that the subject conveyor allowed items sold to customers to travel easily from the second floor storage area to the first floor retail area, and the conveyor system is affixed to the real property, thereby adding value to the property. Neumann, 433 So.2d at 561. Thus, we conclude that, as a matter of law, the subject conveyor is a structural improvement to real property, not a product. As Florida law recognizes that principles of strict liability are not applicable to structural improvements to real property, the trial court properly granted summary judgment in favor of Fisher as to that count.
The Plaintiff additionally argues that the trial court erred by granting summary judgment in Fisher's favor as to the negligence count based on the Slavin doctrine. We disagree.
Under the Slavin doctrine, a contractor cannot be held liable for injuries sustained by third parties when the injuries occur after the contractor completed its work, the owner of the property accepted the contractor's work, and the defects causing the injury were patent. Slavin, 108 So.2d at 467; Foreline Sec. Corp. v. Scott, 871 So.2d 906, 909 (Fla. 5th DCA 2004) ("The Slavin doctrine extinguishes the liability of a contractor for a defect by shifting the duty of care originally owed to others by the contractor to the accepting owner as long as any defects are patent."); Mori v. Indus. Leasing Corp., 468 So.2d 1066, 1067 (Fla. 3d DCA 1985) ("In Slavin, the Florida supreme court clearly adopted the rule that a contractor is not liable for injuries to third parties caused by obvious defects or dangerous conditions which occur after the contractor has completed the work and it has been accepted by the owner."). We acknowledge that in most instances, whether an alleged defect is patent or latent is a question of fact for the jury to determine, and therefore, summary judgment cannot be granted. See Brady v. State Paving Corp., 693 So.2d 612, 613 (Fla. 4th DCA 1997); Kala Invs., Inc. v. *925 Sklar, 538 So.2d 909, 915-16 (Fla. 3d DCA 1989); Milby v. Pace Pontiac, Inc., 176 So.2d 554, 557 (Fla. 2d DCA 1965) (holding that whether an alleged defect is patent or latent should be decided by jury unless the issue can be answered as a matter of law). However, in the instant case, as the undisputed material facts demonstrate that, as a matter of law, the alleged defects were patent, and that the injury occurred after Fisher completed its work on the Pottery Barn store and Williams-Sonoma accepted Fisher's work, the trial court correctly entered summary judgment in favor of Fisher under the Slavin doctrine as to the negligence count. See Ed Ricke & Sons, Inc. v. Green, 609 So.2d 504, 507 (Fla.1992) (affirming summary judgment based on Slavin doctrine, concluding that "[t]he record establishes that the pool of hot water in this case was a patent defect"); Gustinger v. H.J.R., Inc., 573 So.2d 1033, 1034 (Fla. 3d DCA 1991) (affirming entry of summary judgment in favor of construction company where the Department of Transportation knew or should have known about the defect); Mori, 468 So.2d at 1066 (affirming trial court's order granting construction contractor's motion for directed verdict on negligence count based on finding that alleged defects were "obvious").
Accordingly, we affirm the order under review granting Fisher's motion for final summary judgment.
Affirmed.
SUAREZ, J., concurs.
RAMIREZ J., concurring.
In my view, this case can be easily resolved. Nicholas Plaza has appealed an order granting Fisher Development, Inc.'s motion for summary judgment. Under Florida Rule of Civil Procedure 1.510(c), such a motion must "state with particularity the grounds upon which it is based and the substantial matters of law to be argued and shall specifically identify any affidavits, answers to interrogatories, admissions, depositions, and other materials as would be admissible in evidence (`summary judgment evidence') on which the movant relies." There is no question that Fisher Development did this.
As the majority opinion states, Plaza sued Fisher Development under strict liability and negligence. On the strict liability count, Fisher averred that (1) it did not manufacture, sell or distribute the subject conveyor; and (2) the conveyor was a structural improvement on the real property. Therefore, it was not liable under strict liability. On the negligence count, Fisher alleged the defective condition was patent, yet the conveyor was inspected, accepted and approved by the owner. The motion was supported by an affidavit and an exhibit.
Under rule 1.510(c), Plaza, as the adverse party, had to identify any summary judgment evidence on which he relied. Plaza failed to do that. In its affidavit, Fisher swore that it was not the manufacturer, seller or distributor of the conveyor. In his Response to the motion, Plaza stated that he did not share in that contention. Instead of coming forward with any sworn facts, Plaza simply quoted his own unverified complaint where he alleged that Fisher was a distributor of the conveyor. As to the conveyor being a structural improvement, Plaza stated that it was "again, a contention neither shared by the plaintiff nor supported by applicable law." On the conveyor being patently defective, it was "a question particularly suited for jury determination." When Plaza's counsel was questioned repeatedly at oral argument as to what genuine issue of material fact was disputed, counsel consistently answered that it was Fisher's burden to come forward. *926 Respectfully, that position is erroneous. Once Fisher met its initial burden of showing the absence of material disputed issues, the burden shifted to Plaza to prove otherwise either through facts or justifiable inferences from facts presented to the trial court. See Carbonell v. Bell-South Telecomms., Inc., 675 So.2d 705, 706 (Fla. 3d DCA 1996) (citing Stepp v. State Farm Fire & Cas. Co., 656 So.2d 494 (Fla. 1st DCA 1995)). Plaza failed to do this.
As to the negligence count, the majority properly affirms on the basis that the undisputed material facts were that the alleged defects were patent and Fisher's work was accepted by its customers, Pottery Barn and Williams-Sonoma.
Because Plaza failed to come forward with any evidence to create a genuine issue of material fact, I would affirm the trial judge's ruling without engaging in a long dissertation of the law on strict liability or negligence. Accordingly, I concur with the result.
NOTES
[1] Slavin v. Kay, 108 So.2d 462 (Fla. 1959).
[2] The Plaintiff relies on Boddie v. Litton Unit Handling Sys., 118 Ill.App.3d 520, 74 Ill.Dec. 112, 455 N.E.2d 142 (1983), to support its argument that strict liability principles apply to an installed conveyor. However, subsequent cases from Illinois, including Hilliard, have held that a conveyor is an improvement to real property.