B.L. THOMAS, J.
Isaac Simmons (Appellant) appeals an order from the trial court granting summary judgment in favor of Universal Cinema Services, Inc. (Appellee Universal) and Carnatic Seating, Inc. t (Appellee Carnatic Seating) on all strict liability counts against both Appellees and two counts of negligence as to Appellee Carnatic Sealing, raising two issues. We .affirm the second issue without comment and write simply to address Appellant’s specific contention under the first issue that the trial court erred in finding there was no factual dispute as to whether the theater seat was an improvement or a product.
Appellant went to a movie theater to view a movie and, while doing so, the movie theater seat that he was sitting in broke due to a failure in the welding in the seat bottom, causing him to fall to the floor and suffer bodily harm that required surgical interventions: Appellant sued Rave Motion Pictures Pensacola, LLC (Rave), Carnatic PTY, LTD. (Carnatic PTY), Ap-pellee; Carnatic Seating, and Appellee Universal. (Rave, the owner, and operator of the movie theater, and Carnatic PTY, the manufacturer of the seating system, are not parties to 'this appeal.) Appellee Universal was the general contractor that bought the seating system and installed it. Appellee Carnatic Seating — a separate en-, tity from Carnatic PTY — was the broker that sold the seating system to Appellee Universal.
In moving for summary judgment, both Appellees asserted that the theater seating system was not a product for purposes of products liability, but was a permanent improvement to real property, thus, strict liability did not apply to such improvements, pointing to undisputed evidence that the seating system was bolted to the concrete floor of the auditorium. Appellant responded that there were material facts in dispute,, arguing that the movie theater seat was a product as opposed to a permanent improvement, as the seat bottom could be easily removed- from the movie theater chair’s frame without any damage. to the floor. , The trial court agreed with Appellees, granting summary judgment as to the strict liability counts against these Appellees.
As noted by this court in Lupola v. Lupola, 179 So.3d 497, 499-500 (Fla. 1st DCA2015):
A summary judgment is reviewed de novo. Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001). ‘Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.’ Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). ■
Appellant relies primarily on this court’s opinion in Pamperin v. Interlake Companies, Inc., 634 So.2d 1137 (Fla. 1st DCA 1994), arguing that it is controlling and supports reversal. We respectfully disagree and find Pamperin distiñguishablé. The appellant in Pamperin was the job superintendent overseeing the assembly of a storage rack purchased from the appel-lee, the designer and manufacturer of the storage rack. Id. at 1138. The appellant fell after climbing on the rack to determine the cause of a'misalignment, and a horizontal cross beam swung loose as he reached for it. Id. The appellant sued, asserting causes of . action in negligence, breach of implied warranty, and strict products liability. Id. The main issue was on proximate and intervening cause, which *646 is not at issue here. The Pamperin court, however, separately addressed the lower court’s determination that the storage rack was not a product within the scope of strict liability, holding:
We are aware of the line of cases holding that structural improvements to real property are not generally considered products for purposes of products liability actions. Easterday v. Masiello, 518 So.2d 260 (Fla.1988) (jail facility); Seitz v. Zac Smith & Co., Inc., 500 So.2d 706 (Fla. 1st DCA 1987) (floodlight tower); Craft v. Wet ’N Wild, Inc., 489 So.2d 1221 (Fla. 5th DCA 1986) (amusement park water slide); Neumann v. Davis Water and Waste, Inc., 483 So.2d 559 (Fla. 2d DCA), review denied, 441 So.2d 682 (Fla.1983) (sewage treatment tank); and Edward M. Chadbourne, Inc. v. Vaughn, 491 So.2d 551 (Fla.1986) (public road). We conclude, however, that the lower court erred in likening this rack system to such permanent fixtures. Expert witness Coloney attested that such storage rack systems can be, and are, disassembled and resold and are not permanent improvements to real property. We cannot glean from the order below whether the lower court overlooked, disregarded, or discounted this testimony. We, however, find it compelling on this issue. Upon review of the record below, and after carefully analyzing existing case law on the subject, we conclude, as a matter of law, that the instant storage rack system is a product for purposes of the underlying action.
Id. at 1140.
Appellant argues that this case is akin to Pamperin, pointing to the quoted portion above that the storage rack system could be disassembled, noting that, in his own expert witness affidavit, his expert attested that the seat bottom could be easily removed. This, however, ignores the additional language in Pamperin that the expert attested the storage rack system could be resold and was not a permanent improvement to real property. Here, Appellant’s focus is on the fact that a portion of the theater seating system (the seat bottom) could be replaced and was not affixed to the property, arguing that it is akin to the storage rack. The evidence, however, reflects that what was sold.was the theater seating system, which, unlike the storage rack in Pamperin, was actually affixed to the property. Furthermore, unlike Pamperin, Appellant’s expert did not testify that the seat bottom could be resold, and furthermore, there was no evidence admitted to this effect. Appellant’s expert affidavit only attested that the seat bottom could be easily removed and that removal of the seat bottoms was typically done for cleaning, repair, routine maintenance and inspections. Additionally, the undisputed evidence was that this seat bottom was not individually sold, but was only sold by Appellee Carnatic Seating as part of a complete seating system.
We find that this case is more akin to the Third District’s opinion in Plaza v. Fisher Development, Inc., 971 So.2d 918 (Fla. 3d DCA 2007). In Plaza, the appellant, an employee of Pottery Barn, was allegedly injured when he. fell onto a conveyor system at a Pottery Barn store and filed suit against multiple parties, including Fisher Development, Inc., the distributor of the conveyor system. Id. at 919. The second amended complaint. alleged that the conveyor system was defective, because a “pinch point” was not protected by a guard and there was no “kill-switch” control. Id. As to the strict liability count, Fisher Development argued that it was entitled to summary judgment, as the conveyor system was a structural improvement to real property, not a product. Id The Third District noted:
At the hearing on the motion for summary judgment, it-was undisputed that *647 when a customer purchases an item at the Pottery Bam store, the subject conveyor is utilized to transport the item from Pottery Barn’s storage area, which is located on the second floor, to Pottery Barn’s retail area, which is located on the first floor. The subject conveyor is affixed to a stretcher that has an electrical system, and the electrical system is affixed to the building.
The trial court granted Fisher’s motion for final summary judgment. •
Id. at 920. On appeal, the appellant in Plaza pointed to Pamperin as supporting reversal, and the Third District stated:
We find that Pamperin is distinguishable because the strict liability count in that case was filed against the manufacturer of the storage rack system, whereas, the strict liability count, which is the subject of this appeal, was filed against the general contractor. We are equally unpersuaded by the notion that the determination of whether the subject storage rack system is a ‘product’ should be governed by whether it can be disassembled and then resold. If that was the case, practically anything affixed to real property would constitute a ‘product.’ More importantly, Plaza never presented any sworn testimony that the subject conveyor system could be disassembled and resold. Pamperin is, therefore, inapplicable.
Id. at 922 (emphasis in original). The Plaza court further noted that the undisputed facts demonstrated that the convey- or system was installed when the store was constructed, the purpose was to transport items purchased by customers from the storage area to the retail area, the conveyor system was affixed to a stretcher that had an electrical system, and the electrical system was affixed to the building. Id. at 924. Based on these undisputed facts, the court found:
[I]t is clear that the subject conveyor is ‘an integral part of Pottery Barn’s operation, in that the subject conveyor allowed items sold to customers to travel easily from the second floor storage area to the first floor retail area, and the conveyor system is affixed to the real property, thereby adding value to the property. Neumann [v. Davis Water and Waste, Inc., 433 So.2d 559 (Fla. 2d DCA 1983) ]. Thus, we conclude that, as a matter of law, the subject conveyor is a structural improvement to real property, not a product. As Florida law recognizes that principles of strict liability are not applicable to structural improvements to real property, the trial court properly granted summary judgment in favor of Fisher as to that count.

Id.

Here, similar to Plaza, Appellee Universal and Appellee Carnatic Seating are not the manufacturer of the theater seating system. There is also evidence that the seating system is an integral part of the movie theatre’s operation, as it was installed as part of the construction of the theater, and the entire seating system was bolted to the floor. Moreover, as noted above, there is no evidence that either the seat bottom or, more importantly, the seating system could be disassembled and resold.
Thus, we conclude Pamperin is distinguishable from the facts here, and hold that the seating system was a structural improvement to real property. As the Florida Supreme Court recognized in Easterday v. Masiello, 518 So.2d 260, 261 (Fla.1988), “it has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate.” See also Bernard Schoninger Shopping Centers, Ltd. v. J.P.S. Elastomerics, Corp., 102 F.3d 1173, 1177 (11th Cir.1997) (applying Florida law to define “improvement to real property” *648 term in statute of limitations as a “valuable addition -made to property (usually real estate) or an amelioration in its condition, amounting to -more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.” (quoting Hillsboro Island House Condo. Apartments, Inc. v. Town of Hillsboro Beach, 263 So.2d 209, 213 (Fla.1972), internal citation to Black’s Law Dictionary omitted)); McDonough v. Marr Scaffolding Co., 412 Mass. 636, 591 N.E,2d 1079, 1081 (1992) (Massachusetts Supreme Judicial Court affirming court’s ruling that seating bleachers were “improvement to real property” regardless of fact that bleachers could be disassembled, as bleachers were “betterment of real property” for purposes of statute of repose); Schmoyer by Schmoyer v. Mex. Forge, Inc., 423 Pa.Super. 593, 621 A.2d 692, 694 (1993) (citing Black’s Law Dictionary’s definition of “improvement” as cited by Florida Supreme Court in Hillsboro Island House, and holding that “Spin Around” equipment, installed using concrete anchors and “permanently installed on a concrete base as a playground amusement ride,” was improvement to real estate, meeting definition of statute of repose), rev. on other grounds, 538 Pa. 1, 645 A.2d 811 (1994).
Here, we hold that the movie theater seating system was a structural improvement to real property and, thus, not a product. Based upon the foregoing, we affirm the trial court’s order granting Ap-pellees’ motions for summary judgment and amended final judgment.
AFFIRMED.
WINOKUR and.JAY, JJ., concur.