# Third District Court of Appeal

## State of Florida

Opinion filed June 06, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D15-1049, 3D14-2635, & 3D14-3058
Lower Tribunal No. 10-20071

_____

**Melitina Valiente, etc.,**
Appellant,

vs.

**R.J. Behar & Company, Inc., et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Diane V. Ward, Judge.

Ramon M. Rodriguez, P.A., and Ramon A. Rodriguez, for appellant.

Daniels Kashtan, and Joseph W. Downs III and Daniel A. Pelz, for appellee R.J. Behar & Company Inc.; Conroy Simberg, and Hinda Klein (Hollywood) and Elizabeth A. Izquierdo (Hollywood), for appellee Williams Paving Co., Inc.; Kubicki Draper, and G. William Bissett, for appellee Melrose Nursery, Inc.

Before ROTHENBERG, C.J., and EMAS and FERNANDEZ, JJ.

ROTHENBERG, C.J.

In these consolidated appeals, Melitina Valiente, as surviving mother and personal representative of the Estate of Yunier Herrera, deceased ("Valiente"), appeals final summary judgments entered separately in favor of three of the defendants below: R.J. Behar & Company ("R.J. Behar"), Williams Paving Co., Inc. ("Williams Paving"), and Melrose Nursery, Inc. ("Melrose Nursery"). Because we find that the trial court correctly applied the Slavin Doctrine[1], which protects these three defendants from third-party liability in this case, we affirm.

## BACKGROUND

On April 4, 2008, Yunier Herrera ("Herrera") was killed when his motorcycle collided with another vehicle at an intersection located in Hialeah, Florida. Valiente filed a lawsuit against the City of Hialeah ("the City"), R.J. Behar, Williams Paving, and Melrose Nursery, among others. The operative complaint alleges that R.J. Behar, Williams Paving, and Melrose Nursery were negligent and responsible for a visual obstruction that caused the fatal accident. Specifically, they were allegedly responsible for the planting of Jatropha Hastata shrubs in the swale area of the intersection where the accident occurred, shrubs which Valiente contends blocked the view of passing motorists and caused the accident that resulted in Herrera's death. The shrubs were planted in 2005 as part of the City's East 1st Avenue Phase III roadway project. R.J. Behar was contracted

---

[1] Slavin v. Kay, 108 So. 2d 462 (Fla. 1959).

2

by the City to design the project; Williams Paving was selected as the general contractor, responsible for the construction of the roadway and swales; and Melrose Nursery was hired by the City to provide landscaping for the project.

During the course of the litigation below, R.J. Behar, Williams Paving, and Melrose Nursery each moved for summary judgment based on the Slavin doctrine, which relieves a contractor of liability for injuries to third parties when the contractor's work is completed, the owner of the property (in this case, the City) accepts the work, and the defect that allegedly caused the injury is patent. Plaza v. Fisher Dev., Inc., 971 So. 2d 918, 924 (Fla. 3d DCA 2007). R.J. Behar, Williams Paving, and Melrose Nursery contend that they are not liable for Herrera's death because they completed their work, the City accepted the completed roadway project, and any alleged visual obstruction caused by the Jatropha Hastata shrubs would have been patent.

After conducting two hearings and considering arguments from all sides, the trial court granted summary judgment in favor of R.J. Behar, Williams Paving, and Melrose Nursery, finding that the Slavin doctrine relieved these defendants from liability because **if** the shrubs had created a visual obstruction, then that obstruction would have been patent when the completed project was accepted by the City more than two years before the subject accident. The trial court subsequently entered a

3

final judgment in favor of each of these defendants. After Valiente's motions for rehearing were denied, she appealed.

## ANALYSIS

We review the trial court's entry of final summary judgment de novo. Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000); Ryan v. Nat'l Marine Mfrs. Ass'n, 103 So. 3d 1001, 1003 (Fla. 3d DCA 2012).

The Slavin doctrine protects contractors from liability for injuries to third parties by presuming that the owner has made a "**reasonably careful inspection**" of the contractor's work prior to accepting it as completed; if the owner accepts the contractor's work as complete and an alleged defect is patent, then the owner "accepts the defects and the negligence that caused them as his own," and the contractor will no longer be liable for the patent defect. Slavin, 108 So. 2d at 466 (emphasis added); Plaza, 971 So. 2d at 924 ("Under the Slavin doctrine, a contractor cannot be held liable for injuries sustained by third parties when the injuries occur after the contractor completed its work, the owner of the property accepted the contractor's work, and the defects causing the injury were patent."); Fla. Dep't of Transp. v. Capeletti Bros., 743 So. 2d 150, 152 (Fla. 3d DCA 1999) (stating that "the liability of a contractor is cut off after the owner has accepted the work performed if the alleged defect is a patent defect which the owner **could have discovered and remedied**") (emphasis added).

4

"[T]he test for patency is not whether or not the condition was obvious to the owner, but whether or not the dangerousness of the condition was obvious **had the owner exercised reasonable care**." Capeletti Bros., 743 So. 2d at 152 (emphasis added). While in most cases, the patency or latency of a dangerous condition is a question of fact for the jury, thereby precluding summary judgment, there are exceptions where the undisputed material facts establish that if there was a defect, then that defect would have been patent. Ed Ricke & Sons, Inc. v. Green, 609 So. 2d 504, 507 (Fla. 1992); Plaza, 971 So. 2d at 925; Gustinger v. H.J.R., Inc., 573 So. 2d 1033, 1034 (Fla. 3d DCA 1991).

When the Jatropha Hastata shrubs were planted, they were approximately five feet tall and two and one-half feet wide, more than two feet taller than the maximum height set forth in the Miami-Dade County Public Works Manual, and it is undisputed that the presence of the five foot tall shrubs was patent. Nevertheless, Valiente contends that, although the presence and height of the shrubs was patent, the dangerousness posed by the shrubs was nevertheless latent. In support of this argument, Valiente suggests that neither the defendants in this appeal nor the City knew that the shrubs constituted a visual obstruction.

However, as will be discussed more fully herein, what R.J. Behar, Williams Paving, and Melrose Nursery knew or did not know is irrelevant in this case. For purposes of patency under the Slavin doctrine, the relevant question is: **if** the

plantings created a visual obstruction (the alleged dangerous condition), was that dangerous condition latent or patent? And, to reiterate, the test for patency, is not what the City knew, but rather, what the City **could have discovered** had the City performed a reasonably careful inspection.

On a roadway construction project, any reasonably careful inspection of five foot tall shrubs in the swale of a roadway near an intersection must include looking at the shrubs and other landscaping features to see if they constitute a visual obstruction to passing motorists. By definition, the presence of a visual obstruction is readily ascertainable—either it obstructs your view or it does not. Indeed, the plaintiff's own expert contends that the shrubs caused a visual obstruction immediately upon being planted in 2005. On these facts, because any visual obstruction these shrubs **might** have posed **could have** been discovered by the City upon a reasonable inspection, the alleged visual obstruction would have been patent, and therefore, R.J. Behar, Williams Paving, and Melrose Nursery are protected by the Slavin doctrine because the City accepted their completed work.[2]

---

[2] We note that the evidence suggests that the shrubs **did not** create a visual obstruction when they were planted in 2005. Alfredo Martinez, the roadway construction supervisor for the City during the project, testified that he personally selected the plantings, including the Jatropha Shrubs, and supervised the planting. He testified that when the shrubs were planted in 2005, they were four or five feet tall and trimmed of all foliage except for a small amount of leaves, approximately eight-to-ten inches, at the top of the trees. Thus, the evidence actually suggests that if a visual obstruction existed in 2008 when this accident occurred, it was caused by the growth of the shrubs and/or the maintenance or lack of maintenance of the shrubs. If true, then the defendants' liability to Herrera had long expired

6

The dissent accuses the majority of conflating the patency of the condition with the patency of the alleged dangerousness of the condition. The majority does no such thing. What the majority concludes is that because the shrubs themselves were open and obvious, any visual obstruction they **might** have caused when they were planted in 2005 and accepted by the City in 2006 **could** have been discovered through the exercise of reasonable care. Thus, **if** these shrubs created a dangerous condition (i.e., visual obstruction) for motorists on the roadway, the dangerousness of that condition **could** have been discovered through the exercise of reasonable care before the City signed off on the project.

There is absolutely no evidence in the record on appeal to suggest that **if** the plantings obstructed the view of motorists and created a dangerous condition, the City could not have discovered the danger prior to accepting the work. Whether the plantings grew over time into a visual obstruction and constituted a dangerous conditions two years later, in 2008, when the fatal accident occurred, is a separate question and must not be confused with the issue on appeal, which is whether the plantings, as they existed in 2006 when the City approved and accepted them, created a visual obstruction and a dangerous condition that could have been discovered had the City exercised reasonable care. Based on the nature of the

---

because none of them were hired by the City to maintain the swales or plantings after the project was completed and accepted by the City.

7

dangerous condition alleged (plantings that allegedly obstructed the view of motorists), the answer is clearly "yes," as the trial court correctly concluded.

Respectfully, the dissent's discussion regarding summary judgment and its list of cases regarding the general impropriety of granting summary judgment on the issue of whether a party exercised reasonable care is misplaced. While questions of negligence are generally jury questions, the question before the trial court and before this Court on appeal is **not** whether any of these defendants owed Valiente a duty of care or breached that duty, or whether Valiente's damages were a result of any of these defendants' negligence. Rather, the sole issue in this appeal is whether the Slavin doctrine protects these particular defendants from liability where these defendants completed their work on the roadway project in 2006, the City approved and accepted the work in 2006, and Valiente claims that the shrubs constituted a visual obstruction.

The trial court correctly determined that R.J. Behar, Williams Paving, and Melrose Nursery, which all completed their services to the City in 2006, are protected by the Slavin doctrine because, when the City accepted their work in 2006, the shrubs in question either obstructed the view of motorists and had, therefore, created a dangerous condition or they did not. Either way, the answer to that question was discoverable by the exercise of reasonable care and was therefore patent. In other words, the condition was obvious, and whether that condition was

8

dangerous could have been discovered by the exercise of reasonable care. The plaintiff offered no evidence that open and obvious plantings in the swales of the roadway had created some hidden danger to motorists that **could not** have been discovered by the exercise of reasonable care. Thus, there were no material facts in dispute precluding summary judgment on the issue of whether the Slavin doctrine applies to these defendants.

The dissent's statement that the "application of [the Slavin] doctrine requires a determination of whether the City exercised reasonable care in its inspection of the property" is also misplaced because the question is not what the City actually did, but what the City **could** have done. It is undisputed that the City **could** have discovered a visual obstruction, if one did exist, by simply looking.

It is important to remember what this lawsuit is about. The plaintiff claims that the foliage of these shrubs blocked Herrera's view on the roadway in 2008. There is no dispute that none of these defendants were under contract for or were involved with any maintenance or inspection of the roadway or plantings since the completion of their work on the project, and the City accepted their work.

The dissent suggests that R.J. Behar, Williams Paving, and Melrose Nursery had some duty to inspect and perform visibility studies of the plantings in question, and that because all of the defense witnesses testified that there were no visual obstructions at the subject intersection, this testimony created a material issue in

9

dispute precluding summary judgment. These arguments, however, suffer from the same infirmity as the arguments already addressed in this opinion—they have no relevance to this appeal.

Whether any of these defendants had a duty to inspect and perform visibility studies of the plantings in question is obviously a question of duty, which is a separate question not addressed in the motions for summary judgment, the trial court's orders, or on appeal. The sole issue on appeal, regardless of duty, is whether, when the City accepted the work performed by each of these defendants, it relieved each defendant from future liability from any alleged defect that was patent. The issue of duty is, therefore, irrelevant.

Although irrelevant, we also take issue with the suggestion that any of these defendants had a duty or ever performed visual inspections to determine if the plantings in question had created a visual obstruction. R.J. Behar's sole responsibility in this case was to provide design services for the roadway project. These design services did not include the swale plantings. The City and R.J. Behar had previously entered into a contract whereby R.J. Behar would perform engineering and architectural services for the City on an ongoing basis. However, R.J. Behar only had a contractual obligation to complete a task if it was given a purchase order specifying the required work. While there is record evidence that R.J. Behar received a purchase order by the City requiring it to perform design

10

services for the roadway project, there is no evidence that a purchase order was submitted by the City to R.J. Behar requiring R.J. Behar to perform landscaping design services or requiring it to perform construction administration services. Thus, R.J. Behar was never contractually required to design, recommend, or oversee the installation of the landscaping features or to visit the construction site or to monitor, inspect, or correct the work being done on the roadway project. In fact, the record reflects that R.J. Behar never performed these services.

There is unequivocal testimony from both the City's Director of Streets and Storm Water and the president and CEO of R.J. Behar, Robert Behar, verifying that: (1) R.J. Behar was not responsible for the inspection, management, maintenance, and safe condition of the swale areas; (2) R.J. Behar never had any involvement with or responsibility for the trees, shrubs, or other plantings in the swale area; and (3) there were no landscaping features or plantings in the design documents drafted by R.J. Behar except for the inclusion of sod in the swale areas of the project. Accordingly, there is nothing in the record to suggest that R.J. Behar bore a legal duty to protect Herrera from the threat of harm allegedly posed by the shrubs planted by the nursery, a nursery which was hired by the City, not R.J. Behar.

Similarly, the record reflects that Williams Paving, the general contractor for the project, also had no contractual obligation to design the landscaping features

11

for the swales or to plant, maintain, or inspect the landscaping that was independently installed by Melrose Nursery and the City. Williams Paving was, in part, required to construct the roadway and the swales, and to plant **sod** in the swales. It had no obligation to complete a visibility inspection for the independent landscaping features added after Williams Paving had completed its contractual obligations or to maintain the shrubs planted by Melrose Nursery. The City independently hired Melrose Nursery to provide these landscaping features, and Williams Paving was not hired to maintain or inspect what the City and Melrose Nursery had independently agreed to plant.

In sum, when the City hired Melrose Nursery to provide the landscaping for the swales, uninvolved parties, such as R.J. Behar and Williams Paving, had no duty of care as to those landscaping features. The record also establishes that neither defendant was involved with or inspected any of the landscaping features added after they had completed their work other than the planting of sod in the swales.

The dissent appears to suggest that because the defendants have stated in various discovery responses that they had identified no visual obstruction, that the dangerousness of the condition created by the planted Jatropha Hastata shrubs was latent. First, that is not the test, as discussed above. Second, the record on appeal reflects that none of these defendants had a duty to perform or in fact did perform a

visibility study after the Jatropha Hastata shrubs were planted. R.J. Behar conducted no visibility study after the shrubs were planted because the landscaping was not included in the scope of its work nor on its plans. In fact, Robert Behar testified that: (1) it had no oversight function nor inspection duties for this project; (2) its contract with the City did not include performing any visibility study; (3) its plans included no added trees or shrubs because the scope of its work did not include a landscaping function; (4) there were only two "inspections" performed by R.J. Behar: when it began its design work and when the work it was contracted for was completed; (5) these "inspections" were conducted prior to the plantings being installed by Melrose Nursery; and (6) there were no visibility issues **at that time**. In fact, Mr. Behar testified that the first time he ever saw these plantings was after the accident two years after the project was completed.

The same is true for Williams Paving. Joseph Garcia, whose testimony is relied on by the dissent, also testified in his deposition that the plans provided to Williams Paving only included the existing trees and its contract with the City was to install sod upon its completion of the swales. Thus, like R.J. Behar, any visibility study or inspection it performed was confined to the scope of its work, which did not include the Jatropha Hastata shrubs planted by Melrose Nursery after Williams Pavings' work was completed.

13

In fact, Alfredo Martinez, the Roadway Construction Supervisor for the City, confirmed that R.J. Behar, Williams Paving, and Melrose Nursery have no liability in this case. He testified that **he** was the inspector for the project from the beginning through the end of the project. He confirmed that the plans R.J. Behar and Williams Paving were relying on did not reflect any landscaping. He also confirmed that Melrose Nursery was contracted by the City, not R.J. Behar or Williams Paving. More importantly, Martinez admitted that he personally chose the number, type, and size of the trees or shrubs to be planted in the swales; and he chose the Jatropha Hastata shrubs to keep motorists from parking on the swales and creating an obstruction and because the Jatropha Hastata shrubs do not get too tall or thick and will not cause a visual obstruction. He explained that the shrubs he selected had been trimmed of branches, leaving only an eight-inch plume of foliage at the top of the four-to-five foot plant. He testified that he told Melrose Nursery exactly how many of these shrubs to plant and exactly where he wanted each one planted.

> MARTINEZ: Okay. Normally, I will make a list of trees according to the address of each house, how many trees and what kind of trees. Then we will ask the landscaping company to give us an estimate, a proposal for the kind of tree that we want and the amount and the size of the trees. Once that is approved, we issue a PO order to the landscaping company to carry out the work.
>
> Q: Who actually performs the task of selecting the trees and the plants and the shrubs to be planted in the swale areas?

14

MARTINEZ: I did.

Q: Exclusively?

MARTINEZ: Maybe with the help of Efrain Hill [supervisor for the City]. Nobody else.

Q: So as far as you know, regarding the trees, plants and shrubs that were planted in both the medians as well as the swale areas as part of the East 1st Avenue Project, there was no site plan ever generated or put together identifying where those trees, plants and shrubs were to be specifically planted in both the swale areas and the medians.

MARTINEZ: That is correct. I never seen [sic] one by any company.

. . . .

MARTINEZ: I repeat the same thing again. Melrose did not give a specific instruction as to what type of tree and where to plant the trees.

Q: What instruction or recommendation or advice did Melrose, in fact give the City of Hialeah as it relates to trees, plants and shrubs planted in the swale areas located at or near the southeast corner or the intersection of East 1st Avenue and East 12th Street?

MARTINEZ: No specific instruction.

Q: None whatsoever?

MARTINEZ: None.

. . . .

MARTINEZ: You know, my only discrepancy with what you are saying is that Melrose never told us: "Plant this type of tree at this corner or that corner or this plant there at that address."

Q: I'm just trying - -

MARTINEZ: That was - - that was done by my discretion right or wrong, but it was done at my discretion.

. . . .

Q: Okay. And let me be specific. Was Melrose Nursery contractually retained by the City of Hialeah to supply the trees, the plants and the shrubs that were planted in the swale areas near the southeast corner of the East 1st Avenue and East 12th Street?

MARTINEZ: That's correct.

Q: As part of the East 1st Avenue Project.

MARTINEZ: As per our instructions.

. . . . .

Q: And those instructions were in writing?

MARTINEZ: Yes.

. . . .

MARTINEZ: The instruction was just an address with the type of tree that was supposed to be planted at that address.

. . . .

Q: And clearly, you would go out and inspect after Melrose planted. Whether they were the Jatropha Hastata trees or shrubbery or anything else, you would go out and inspect it after it was planted; correct?

MARTINEZ: That's correct.

Q: If their installation or planting of the trees were in violation of any code or ordinance, whether it was the City of Hialeah or Miami-Dade County or any other ordinance, code, or standard, would you have told them to correct it?

16

MARTINEZ:  **Well, you know, there shouldn't be any kind of violation by Melrose.  Because we were the one who told them where to inspect - - where - - where to plant the tree, what kind of tree and where to plant it.**

. . . .

Q:  So Melrose simply was - - what you're saying is Melrose simply planted the trees where the City of Hialeah told them.  And whether or not it was in compliance with any code standards or ordinances, the City of Hialeah, through your Department, would have known that; correct?

MARTINEZ: That's correct.

Martinez Dep. (emphasis added).

As this evidence clearly demonstrates, R.J. Behar, Williams Paving, and Melrose Nursery never belonged in this suit in the first place, and the <u>Slavin</u> doctrine protects them from having to defend themselves further in this lawsuit.

## CONCLUSION

Valiente's theory in this case is that R.J. Behar, Williams Paving, and Melrose Nursery were responsible for Herrera's death because they were responsible for an alleged visual obstruction caused by the Jatropha Hastata shrubs planted in the swale of the intersection where the motor vehicle accident occurred. However, the City accepted their completed work in 2006, two years prior to the accident, the Roadway Construction Supervisor for the City admitted that he inspected the landscaping after the Jatropha Hastata shrubs were planted, and it is presumed that the City made a reasonable inspection of that work prior to

17

accepting it. **If** the shrubs created a visual obstruction, the obstruction **could** have been revealed had the City performed a reasonably careful inspection. Thus, any visual obstruction that may have existed would have been patent and, if any visual obstruction did exist, the dangerousness of that condition would equally have been patent. For these reasons, we find no error in the trial court's entry of final summary judgment in favor of R.J. Behar, Williams Paving, and Melrose Nursery because they are protected by the application of the <u>Slavin</u> doctrine. We also find that Valiente's remaining arguments are without merit, and we therefore decline to specifically address them here. Accordingly, we affirm.

Affirmed.

FERNANDEZ, J., concurs.

<u>**Valiente v. R. J. Behar & Company, Inc., et al.**</u>
<u>**3D15-1049, 14-2635 & 14-3058**</u>

EMAS, J., dissenting.

**<u>INTRODUCTION</u>**

I respectfully dissent from the majority's opinion affirming the trial court's final summary judgment in favor of defendants R.J. Behar & Company (a roadway design consultant and engineering company), Williams Paving Company (a general contractor), and Melrose Nursery, Inc. (a nursery and landscaping company),[3] because the trial court misapplied the <u>Slavin</u> doctrine, and because there unquestionably remain material issues of disputed fact regarding whether the dangerousness of the condition was obvious and whether the City exercised reasonable care.

**<u>ANALYSIS</u>**

**<u>1. The Slavin Doctrine</u>**

---

[3] Where appropriate, Melrose Nursery, Inc., Williams Paving Company, and R.J. Behar & Company are referred to collectively as "defendants."

19

In Slavin v. Kay, 108 So. 2d 462, 466 (Fla. 1959), the Florida Supreme Court held that "[b]efore accepting the work [of a contractor] as being in full compliance with the terms of the contract, [a property owner] is presumed to have made a reasonably careful inspection thereof, and to know of its defects, and if he takes it in the defective condition, he accepts the defects and the negligence that caused them as his own, and thereafter stands forth as their author."  This court further defined the contours of the "Slavin doctrine" in Florida Department of Transportation v. Capeletti Bros., Inc., 743 So. 2d 150, 152 (Fla. 3d DCA 1999): "Generally, the liability of a contractor is cut off after the owner has accepted the work performed if the alleged defect is a patent defect which the owner could have discovered and remedied."  Accordingly, the Slavin doctrine applies to "cut off" a contractor's liability when two things have occurred: (1) the owner has accepted the work performed; and (2) the alleged defect is a patent defect that the owner in the exercise of reasonable care could have discovered and remedied.[4]

Importantly, as to the question of patency, we held in Capeletti that "the test . . . is not whether or not the condition was obvious to the owner, but whether or not the **dangerousness of the condition was obvious had the owner exercised reasonable care**."  Id.  "If the dangerousness of the condition was not obvious,

---

[4] The Slavin doctrine has also been held to apply to design engineers and architects. See Easterday v. Masiello, 518 So. 2d 260 (Fla. 1988).

then the defect is latent, and the contractor is not automatically relieved of liability." Id.

## 2. Summary Judgment in Negligence Cases

It is apodictic that, when reviewing summary judgment, we are required to view the facts in a light most favorable to the non-movant, and to draw every reasonable inference in the non-movant's favor. Maronda Homes, Inc. of Fla. v. Lakeview Reserve Homeowners Ass'n, Inc., 127 So. 3d 1258, 1268 (Fla. 2013); Holl v. Talcott, 191 So. 2d 40, 43-44 (Fla. 1966). "If the record on appeal reveals the possibility of genuine issues of material fact, or even the slightest doubt in this respect, the summary judgment should be reversed." Carbajo v. City of Hialeah, 514 So. 2d 425, 425 (Fla. 3d DCA 1987). See also Leybovitch v. SecureAlert, Inc., 237 So. 3d 1104 (Fla. 3d DCA 2017); Piedra v. City of N. Bay Vill., 193 So. 3d 48 (Fla. 3d DCA 2016); Aguero v. First Am. Ins. Co., 927 So. 2d 894 (Fla. 3d DCA 2005); Copeland v. Florida New Inv. Corp., 905 So. 2d 979 (Fla. 3d DCA 2005); Sierra v. Shevin, 767 So. 2d 524 (Fla. 3d DCA 2000).

Trial courts should proceed with even greater caution when deciding summary judgment motions in negligence cases, especially where the issue is whether a party exercised reasonable care. Although the majority's decision is premised upon the Slavin doctrine, application of that doctrine requires a determination of whether the City exercised reasonable care in its inspection of the

21

property. Whether or not a party exercised reasonable care lies at the very heart of a negligence claim, and is generally a question for the factfinder to determine. See, e.g., Moore v. Morris, 475 So. 2d 666, 668 (Fla. 1985) (acknowledging: "Summary judgments should be cautiously granted in negligence and malpractice suits"); Talcott, 191 So. 2d at 46 (observing that "summary judgment procedures should be applied with special caution in negligence actions"); Kala Invest., Inc. v. Sklar, 538 So. 2d 909, 913 (Fla. 1989) (explaining "it is 'peculiarly a jury function to determine what precautions are reasonably required in the exercise of a particular duty of care'") (quoting Orlando Exec. Park v. Robbins, 433 So. 2d 491, 913 (Fla. 1983) (receded from on other grounds by Mobile Oil Corp. v. Bransford, 648 So. 2d 119 (Fla. 1995))); Marks v. Delcastillo, 366 So. 2d 1259, 1264 n.8 (Fla. 3d DCA 1980) (observing: "The precautions deemed necessary in discharging a particular duty of reasonable care are ordinarily for the jury to decide"); Holley v. Mt. Zion Terrace Apts., Inc., 382 So. 2d 98, 100 (Fla. 3d DCA 1980) (acknowledging: "Under our system, it is peculiarly a jury function to determine what precautions are reasonably required in the exercise of a particular duty of care"). And as we have previously held in cases involving the very same issue: "Whether or not a condition is latent or patent is ordinarily a question for the jury. Thus, summary judgment is usually inappropriate." Capeletti, 743 So. 2d at 152 (citing Kala, 538 So. 2d at 916).

22

While there are, of course, circumstances in which summary judgment on a negligence claim could properly be granted, the instant case is not one of them, and provides no principled basis to deviate from these well-established general rules.

**3. Issues of Fact Remain in Dispute: Whether the Five-Foot Shrubs Created a Dangerous Condition and, if so, Whether the Dangerous Nature of the Condition Could Have Been Discovered Had the Owner Exercised Reasonable Care**

When viewed in a light most favorable to Valiente (as the non-moving party) the record evidence shows:

The claims in this case arose out of a fatal automobile accident at an intersection in the City of Hialeah. The City had contracted with the defendants, each of which provided services as part of a 2005 roadway project that involved planting shrubs in the swale area of the intersection where the accident occurred.

R.J. Behar was responsible for inspecting the project and for performing visibility studies, including assessing visibility issues for traffic at the intersection where the fatal accident occurred.

Melrose Nursery planted the shrubs at the intersection in question. The shrubs were five feet tall when Melrose planted them, twice the permissible height.[5]

Williams Paving was the general contractor for the project. Williams Paving's responsibilities included inspecting the roadway and swale areas to

---

[5] Valiente relied for this assertion on a Miami-Dade County Public Works Manual, which provided that the maximum height allowable for such shrubs is two and one-half feet.

identify and remove or correct any safety violations, including any visual obstructions.

The operative complaint alleged, *inter alia*, that these defendants negligently planted (or caused to be planted), or failed to remove or maintain certain shrubs in the swale, causing a visibility obstruction and leading to the accident which resulted in the death of Yunier Herrera.

The defendants answered the complaint and each denied that they knew or should have known that any visual obstructions or dangerous conditions existed at the subject intersection.

Following discovery, each of the defendants moved for summary judgment based upon the Slavin doctrine. Each defendant asserted that, because the City of Hialeah (the owner of the property) accepted the property after construction was complete, and because the alleged visual obstruction was a patent condition, the defendants were entitled to judgment as a matter of law. The trial court agreed, granting summary judgment in favor of the defendants. In affirming, the majority opinion conflicts with this court's own precedent, and fails to consider the record evidence which reveals that genuine issues of material fact remain in dispute.

Interestingly, both the majority and this dissent rely upon the very same excerpt from the very same case in support of our respective conclusions: "[T]he test for patency is not whether or not the condition was obvious to the owner, but

24

whether or not the dangerousness of the condition was obvious had the owner exercised reasonable care." Capeletti, 743 So. 2d at 152.

The majority, however, appears to focus on the very last clause ("had the owner exercised reasonable care"), see Maj. Op. at *5, while I would suggest the proper focus is on the entire portion of that clause ("whether or not the dangerousness of the condition was obvious had the owner exercised reasonable care.")

The majority holds that

the test for patency, to reiterate, is not what the City knew, but rather, what the City **could have discovered** had the City performed a reasonably careful inspection.

On a roadway construction project, any reasonably careful inspection of five foot tall shrubs in the swale of a roadway near an intersection must include looking at the shrubs and other landscaping features to see if they constitute a visual obstruction to passing motorists. By definition, the presence of a visual obstruction is readily ascertainable—either it obstructs your view or it does not. Indeed, the plaintiff's own expert testified that the shrubs caused a visual obstruction immediately upon being planted in 2005. On these facts, because any visual obstruction these shrubs **might** have posed **could have** been discovered by the City upon a reasonable inspection, the alleged visual obstruction would have been patent, and therefore, R.J. Behar, Williams Paving, and Melrose Nursery are protected by the Slavin doctrine because the City accepted their completed work.

Maj. Op. at *6 (underscore emphasis added).

The majority implicitly determines that the mere existence of these five-foot shrubs in the swale necessarily renders them a "visual obstruction." In doing so,

25

however, the majority conflates the patency of the <u>condition</u> (five-foot shrubs in the swale) with the patency of the <u>dangerousness</u> of the condition (five-foot shrubs creating a visual obstruction for motorists). This glosses over the most significant distinction drawn in <u>Capeletti</u>: that summary judgment relief under <u>Slavin</u> is inappropriate where the <u>condition</u> is obvious, but where it remains in dispute whether the <u>dangerousness</u> of the condition was obvious.

The issue in this case is: (1) whether the five-foot shrubs planted in the swale created a dangerous condition; and (2) if so, whether such a dangerous condition was obvious in the exercise of reasonable care.

The majority posits:

> On a roadway construction project, any reasonably careful inspection of five foot tall shrubs in the swale of a roadway near an intersection must include looking at the shrubs and other landscaping features to see if they constitute a visual obstruction to passing motorists.

Maj. Op. at *6. I take no issue with this statement. However, the majority relies upon this statement to hold that, *as a matter of law*, the City did not exercise reasonable care in its inspection because, had it done so, it necessarily would have discovered that the five-foot shrubs created a dangerous visual obstruction.

I don't deny that this may ultimately be a reasonable finding of fact for the jury to make at the conclusion of a trial. It might even be a reasonable inference to draw if we (or the trial court) were permitted to draw reasonable inferences in favor of the moving party at the summary judgment stage. But neither we nor the

26

trial court are permitted to do so, because all evidence must be viewed, and reasonable inferences resolved, in favor of the non-moving party.

Instead, the record evidence and its inferences, viewed in a light most favorable to Valiente, establish the following:[6]

►R.J. Behar, in response to a request for production seeking all visibility studies it conducted at the subject intersection, responded: "None; there were *no visibility issues at that location*." (Emphasis added.)

►Williams Paving was the general contractor retained by the City for the Project. Joseph Garcia, the Safety and Traffic Supervisor for Williams Paving, testified in deposition that Williams Paving was to identify and remove visual obstructions in the roadway and swales, including anything over three inches tall. Mr. Garcia acknowledged that, in similar previous projects, he had identified and removed visual obstructions caused by plants, trees and shrubs. Mr. Garcia testified that in the instant project there were *no visual obstructions at the subject intersection.* (Emphasis added.)

►Ron Smith, another Williams Paving employee, averred in his affidavit that "*At no time prior to April 2008 was Williams Paving aware of any alleged dangerous condition or any visual obstructions* occurring in the intersection of East 1st Avenue and 12th street caused by trees/shrubs or plants." (Emphasis added.)

---

[6] In this regard, the majority opinion makes only a passing reference: "Valiente suggests that neither the defendants in this appeal nor the City knew that the shrubs constituted a visual obstruction." Maj. Op. at *5. As can be seen, however, Valiente does not merely "suggest" that defendants claimed a lack of knowledge; instead, Valiente presented record evidence establishing that defendants themselves asserted that there were no visual obstructions at the location.

►Melrose Nursery, in response to a request for admissions, admitted that it "*did not know that the . . . shrubs it sold and planted in the swale areas . . . created a visual obstruction* to motorists." (Emphasis added.)

►The City stated under oath, in answer to an interrogatory, that "[t]o the best of [the City's] knowledge and belief, *there were no dangerous conditions and/or visual obstructions* found in the swale area . . . ." (Emphasis added.)

►The City's Roadway Construction Supervisor, Alfredo Martinez, testified at deposition that after the shrubs were planted in the swale he inspected the work and would not have paid Melrose unless he was satisfied that it was in compliance with all applicable codes. Mr. Martinez further testified that the shrubs in question were "behind the line of sight", meaning "anyone driving in any direction should be able to see on-coming traffic" because the shrubs were "not interfering with the line of sight."

Thus, while the presence of these five-foot shrubs may have been open and obvious, it remains a disputed issue of fact whether the dangerousness posed by the presence of these five-foot shrubs was open and obvious.

The instant case is analogous to Brady v. State Paving Corp., 693 So. 2d 612 (Fla. 4th DCA 1997). In Brady, plaintiffs were injured when their car drove into an area where water had ponded on an expressway under construction, causing the driver to lose control and the car to roll over. Plaintiffs sued the Department of Transportation, alleging that it knew or should have known of this dangerous condition. Plaintiffs also sued several of the companies involved in the construction of the expressway, alleging that the condition was a latent defect.

28

The plaintiffs' expert testified in deposition that the ponding condition was open and obvious. The trial court, in apparent reliance on this concession from plaintiffs' expert, granted summary judgment in favor of the companies involved in the construction. The Fourth District reversed, noting that (1) the testimony of the plaintiff's expert was contradicted by evidence that the ponding problem was not open and obvious; and (2) the Department of Transportation had inspected and could not even detect the existence of a problem. Id. at 613.

The Brady court held that, despite the fact that the presence of the water on the roadway was a readily observable and patent condition, a genuine issue of material fact remained as to whether the dangerousness of the condition was patent.

This court, in similar circumstances, has held to like effect: the fact that a condition may be patent does not mean, as a matter of law, that the dangerousness or defective nature of the condition is patent. See, e.g., Parrot Jungle & Gardens Ltd., Inc. v. Andrews, 959 So. 2d 303 (Fla. 3d DCA 2007) (reversing summary judgment and holding that, although monkey bars allegedly built too high from the ground and, contrary to industry standards, without a proper safety surface below, genuine issue of material fact remained as to whether the defective nature of the condition was patent); Kala, 538 So. 2d at 913 (reversing summary judgment granted by the trial court under Slavin and holding, "the test for patency is not

29

whether the object itself or its distance from the floor was obvious to Kala, but whether the *defective nature* of the object was obvious to Kala with the exercise of reasonable care); <u>Foster v. Chung</u>, 743 So. 2d 144, 147 (Fla. 4th DCA 1999) (reversing summary judgment in a lawsuit alleging negligence from an accumulation of water on a roadway resulting in an accident because "although the water on the road may have been obvious, the depth of the water was not . . . . The test under <u>Slavin</u> would not be whether the water itself was obvious, but rather the dangerous nature of the water was obvious") (quoting <u>Brady</u>, 693 So. 2d at 613)).

The same result should obtain in this case. While the presence of the five-foot shrubs in the swale of the intersection was open and obvious, this does not establish, as a matter of law, the open and obvious dangerousness of the five-foot shrubs.

**<u>CONCLUSION</u>**

Given the record below, genuine issues of material fact remain in dispute regarding whether the five-foot shrubs created a condition whose dangerous nature was obvious had the City exercised reasonable care. By affirming the trial court, the majority's decision fails to properly apply the <u>Slavin</u> doctrine as established by the Florida Supreme Court, and conflicts with this court's decision in <u>Capeletti</u>.

We should reverse the final summary judgments entered by the trial court, and I therefore respectfully dissent.